# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| | ) |
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| | ) |
| **v.** | )   **Civil Action No. 04-128- 06, 13, 21 (RMC)** |
| | ) |
| **JONTE ROBINSON,** | ) |
| **KENNETH DODD, and** | ) |
| **TOMMIE DORSEY,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OPINION

On January 9, 2007, the Court began jury selection for a death penalty trial with four co-defendants: Kenneth Dodd, Tommie Dorsey, Jonte Robinson, and Larry Gooch, Jr.  During the jury selection process, Messrs. Dodd, Dorsey, and Robinson entered into a "wired" plea agreement with the United States.  Each of them pled guilty to narcotics conspiracy, RICO conspiracy, and various gun charges, and Messrs. Dorsey and Robinson pled guilty to two murders, in return for which the parties agreed to a sentence of 25 years for each Defendant.  The plea agreement was presented to the Court on January 17, 2007, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  The Court went through separate colloquies with each Defendant pursuant to Federal Rule of Criminal Procedure 11, and Messrs. Dodd, Dorsey, and Robinson pled guilty after satisfying the Court that each plea was knowing and voluntary.  Mr. Gooch proceeded to trial.

Thereafter, Messrs. Dodd, Dorsey, and Robinson filed separate notices to the Court, each stating that he wanted to withdraw his plea.  *See* Robinson's May 3, 2007 Notice [Dkt. # 789] & May 21, 2007 Notice [Dkt. # 807]; Dodd's May 7, 2007 Notice [Dkt. # 790]; Dorsey's June 13,

2007 Notice [Dkt. # 822].  The United States filed oppositions.  *See* Response to Dodd & Robinson's motions dated June 13, 2007 [Dkt. # 819] & Response to Dorsey's motion dated June 15, 2007 [Dkt. # 826].  Because these motions were bare-bones notices that did not contain any analysis, the Court set a briefing schedule, and the Defendants filed supplemental submissions in support of their motions.  *See* Robinson's July 12, 2007 Supp. Submission [Dkt. # 834]; Dodd's July 18, 2007 Supp. Submission [Dkt. # 836]; Dorsey's July 18, 2007 Mot. to Adopt Robinson's Mot. [Dkt. # 835]; Dorsey's July 19, 2007 Mot. to Adopt Dodd's Mot. [Dkt. # 837].[1]  The United States filed a supplemental opposition.  *See* Response filed July 30, 2007 [Dkt. # 838].  Mr. Dodd alone filed a reply.  *See* Dodd's Reply [Dkt. # 839].  Accordingly, the matter is fully briefed and ready for decision.

## I. LEGAL STANDARDS

Before a court actually accepts a guilty plea, a defendant may withdraw it for any reason.  Fed. R. Crim. P. 11(d)(1) ("A defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason.").  After a plea is accepted but before a sentence is imposed, a court may permit a defendant to withdraw his guilty plea upon a showing of a "fair and just reason" for requesting the withdrawal.  Fed. R. Crim. P. 11(d)(2)(B) ("A defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea but before it imposes sentence if: . . . (B) the defendant can show a fair and just reason for requesting the withdrawal").  When seeking to withdraw a plea after the court has accepted it, a defendant has the burden to prove valid grounds.  *Id.*; *United States v. Rogers*, 387 F.3d 925, 932 (7th Cir. 2004).

In order to determine whether a defendant has shown a fair and just reason for

---

[1] Mr. Dorsey moved to adopt as his own the submissions filed by Messrs. Dodd and Robinson.  Those motions are granted.

withdrawal, a matter within the district court's discretion, *United States v. Jones*, 472 F.3d 905, 908 (D.C. Cir. 2007); *United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004), a court must consider three factors: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted."[2] *West*, 392 F.3d at 455 (*quoting United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003)); *accord United States v. McCoy*, 215 F.3d 102, 106 (D.C. Cir. 2000). "The last of these is the most important." *West*, 392 F.3d at 455.[3]

A defendant seeking to withdraw a guilty plea before sentencing "must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury." *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995) (citation omitted). Where the motion asserts legal innocence and the plea was not properly entered or is otherwise constitutionally infirm, presentence withdrawal should be "rather freely allowed." *United States v. Barker*, 514 F.2d 208, 220 (D.C. Cir. 1975). Where the plea was properly entered and its constitutionality is not an issue, more substantial reasons must be provided for why the claim of innocence was not asserted earlier.

> Were mere assertion of legal innocence always a sufficient condition
> for withdrawal, withdrawal would effectively be an automatic right.
> There are few if any criminal cases where the defendant cannot devise

---

[2] Generally, the test for the validity of a plea agreement is whether the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

[3] The Court is not required to hold an evidentiary hearing on these motions to withdraw plea, because they present no material factual issues in dispute. *See United States v. Curry*, No. 05-3101, 2007 WL 2176135, *6 (D.C. Cir. July 31, 2007).

some theory or story which, if believed by a jury, would result in his acquittal. . . . Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.  In fact, however, a guilty plea is no such trifle, but "a grave and solemn act" which is "accepted only with care and discernment."  It follows that a court, in addressing a withdrawal motion, must consider not only whether the defendant has asserted his innocence, but also the reason why the defenses now presented were not put forward at the time of the original pleading.  It should go without saying that the standard is very lenient when the plea was entered unconstitutionally or contrary to Rule 11 procedures. . . .  By the same token, however, *where the plea itself was properly entered withdrawal is not an automatic right and more substantial reasons for delay must generally be asserted.*

*Id.* at 221 (citations omitted; emphasis added).

Thus, the D.C. Circuit is "extremely reluctant" to reverse a district court's denial of a motion to withdraw a plea where the defendant failed to show error under Rule 11, even if the defendant makes out a legally cognizable defense.  *Cray*, 47 F.3d at 1208.  "[A] defendant who fails to show  some error under Rule 11 has to shoulder an *extremely heavy burden* if he is ultimately to prevail."  *Id.* (emphasis added).  "This is because our judicial system consecrates the guilty plea as a grave and solemn act, and regards the withdrawal of guilty pleas as inherently in derogation of the public interest in finality and the orderly administration of justice."  *United States v. Tolson*, 372 F. Supp. 2d 1, 9-10 (D.D.C. 2005) (internal quotation marks and citations omitted).

## II. ANALYSIS

A.  The Guilty Pleas Were Accepted by the Court.

Each Defendant argues that the Court never accepted their guilty pleas and so they should be permitted to withdraw the pleas for any reason without leave of court.  This represents a misunderstanding of the plea colloquies: in each instance, the Court conditionally accepted the guilty

pleas while awaiting the presentence report ("PSR").  This is explicitly permitted.  *United States v. Hyde*, 520 U.S. 670, 677 (1997); *Jones*, 472 F.3d at 908; *accord United States v. Holland*, 117 F.3d 589, 593 (D.C. Cir. 1997) (permitting the court to accept a plea conditionally after the court accepts the factual basis for the plea, and rejecting the argument that the defendant can withdraw his plea "simply on a lark" after he has "sworn in open court that he actually committed the crimes, and after he has stated that he is pleading guilty because he is guilty").

> [T]he Supreme Court in *Hyde* clarified that guilty pleas exist independently from plea agreements on which they rest, explaining that "the Rules nowhere state that the guilty plea and the plea agreement must be treated identically."  As a result, the Court ruled, a district court may accept a guilty plea without simultaneously accepting the underlying plea agreement.

*Jones*, 472 F.3d at 908 (citing *Hyde*, 520 U.S. at 677).

Specifically, as to Mr. Dodd, after the Court accepted the factual proffer and Mr. Dodd entered his pleas, the Court said, "The Court will accept that guilty plea conditionally as an 11(c)(1)(c)."  Tr. Plea Proceedings, January 17, 2007 ("Tr.") at 25.[4]  As to Mr. Robinson, after he

---

[4] Mr. Dodd argues that the Court did not state the conditions on which his plea was accepted and told him a different calculation of his sentence under the U.S. Sentencing Guidelines would be computed.  He contends that the plea hearing therefore suggested a clear lack of finality to him. Reply at 2.  The argument is unpersuasive.  At the beginning of the hearing, counsel for the Defendants recognized that the Court would await the presentence report from the Probation Office before deciding whether to accept the plea agreements.  Tr. at 5 ("the probation department will essentially know exactly how many days or months or years [the Defendants were held in Superior Court] and that is an adjustment we'll be asking you to make at the time that you impose sentence"); *id*. at 8 ("Why don't I say that we'll see what the probation office says in terms of operation of law"); *id*. at 11 ("you're taking the plea under advisement I assume?").  It also warned the parties that the Court would recalculate a Guidelines sentence for each Defendant because "three points off for early acceptance of responsibility seems to me to be inappropriate under the facts."  *Id*. at 8-9; *see also id*. at 9 (Court: But I want to make sure that everybody understands that when it comes to sentencing, I will re-evaluate what the real guidelines calculation is[,] taking your proposed guidelines calculation as the one the parties think is the one that applies, but in the end it's up to me to figure

entered his pleas, the Court stated, "The Court accepts that plea conditionally pending the presence report." *Id.* at 38.  After Mr. Dorsey entered his pleas, assuring the Court that he entered them "[o]f my own free will," *id.* at 46, the Court stated, "All right, then[,] the Court accepts that plea conditionally pending on the presentence report." *Id.*  This was the appropriate procedure because the Court may accept a plea without accepting the underlying plea agreement. *See Jones*, 472 F.3d at 908.  Because the Court accepted these Defendants' pleas, they must show a fair and just reason before being allowed to withdraw.

      B. <u>Defendants Were Not Coerced.</u>

      The Defendants argue that they were subject to improper coercion due to advice of counsel, because the plea was "wired", and/or because the Court did not warn each of them that they could not later withdraw their pleas.

      1. Advice of counsel to accept the plea

      The Defendants were charged as co-conspirators with approximately 35 others in a narcotics conspiracy and RICO conspiracy that trafficked in large amounts of phencyclidine, also known as PCP, cocaine base, also known as crack, and ecstasy pills.  Five co-defendants went to trial in March 2006 and all were convicted and sentenced.  In addition to the compact disks of pre-trial discovery, numbering well over 100 disks, the transcript and evidence from the 2006 trial were fully available to these Defendants and their counsel.  Therefore, when counsel advised these Defendants that a plea to 25 years was worth taking, counsel were not just guesstimating about the Government's

---

it out.  But I don't think that affects whether I "accept" the 11(c)(1)(C) plea or not.").  Mr. Dodd was specifically asked if he understood that the Court would recalculate his Guidelines sentence and said that he did. *Id.* at 19.  He also agreed that "it doesn't make a difference because your agreement is for 25 years." *Id.*

evidence: they knew intimately how it would be presented and how powerful it was.

A lawyer has a professional obligation to give an honest assessment to a client about the prospect for success at trial.  Advice to a criminal defendant to enter a guilty plea in the face of strong and overwhelming evidence of guilt is not coercion.  *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (noting "advice – even strong urging by counsel – does not invalidate a guilty plea").  Each Defendant had two counsel advising him and each said that he was satisfied with the advice he had received.  Tr. at 16 (Dodd); *id*. at 27 (Robinson); *id*. at 40 (Dorsey).  Counsel were not pushing their clients to accept a plea to avoid getting ready for trial: all the preparation work had been done and jury selection was underway.  As the Court stated, "[T]his is quite a deal," *id*. at 6, especially "given the other sentences that I have imposed in this matter . . . this is quite an agreement." *Id*. at 13.  The Court finds no deficiency in the Defendants' pleas because their lawyers urged them to accept the plea agreements.

2.  "Wired" plea

Mr. Gooch was facing the possibility of a death sentence.  Messrs. Dodd, Dorsey, and Robinson were not.  If all three non-death eligible Defendants pled out, the trial would be streamlined.  If fewer than all of the three non-death eligible Defendants pled out, the trial would not be markedly reduced and a complete prosecutorial effort would be required.  Presumably for these sorts of reasons, the United States was willing to enter a very last-minute plea agreement but only if all three non-death eligible Defendants agreed.  Therefore, the plea was "wired":  they all had to agree or no one got the deal.

The Defendants now say that the "wired" nature of the plea generated an unconstitutional deficiency.  Their testimony under oath at the Plea Proceeding suggests otherwise.

-7-

In the colloquy the Court inquired into the voluntary nature of the plea, and Mr. Dodd stated at follows:

> THE COURT: Has anybody threatened you, Mr. Dodd, to get you to enter into this plea agreement?
>
> DEFENDANT DODD: No, ma'am.
>
> THE COURT: Has anybody promised you anything beyond what I have recited from the plea agreement?
>
> DEFENDANT DODD: No, ma'am.
>
> THE COURT: Is there any reason other than the fact that you're guilty that would you enter into this plea agreement?
>
> DEFENDANT DODD: No.

*Id*. at 24.  The Court's colloquy with Mr. Robinson was similar:

> THE COURT: Are you willing to [give up your constitutional rights to go to trial] because you're guilty or for any other reason?
>
> DEFENDANT ROBINSON: Because I'm guilty.
>
> THE COURT: Has anybody forced you to accept this plea?
>
> DEFENDANT ROBINSON: No, ma'am.
>
> THE COURT: Has anybody threatened you?
>
> DEFENDANT ROBINSON: No, ma'am.
>
> THE COURT: Has anybody promised you anything to get you to enter this plea?
>
> DEFENDANT ROBINSON: No, ma'am.

*Id*. at 33.  When the Court took Mr. Dorsey through the Rule 11 colloquy, it asked:

> THE COURT: Do you enter those pleas of your own free

> will or did someone threaten you to get you to enter a plea?
>
> DEFENDANT DORSEY: Of my own free will.
>
> THE COURT: What about did somebody promise you anything that's not in the plea agreement to get you to enter a plea?
>
> DEFENDANT DORSEY: No, ma'am.

*Id.* at 46.  The Court then accepted Mr. Dorsey's plea conditionally.  *Id.*

A district court does not have to undertake a special inquiry into the voluntary nature of a plea just because one defendant's plea is "wired" to another.  *Holland*, 117 F.3d at 594.  Each Defendant was advised that the plea was "wired" and that "[i]f any one of you does not enter into the plea or withdraws his plea, then it falls apart for all of you."  Tr. at 19 (Dodd); *id.* at 29 (Robinson); *id.* at 41-42 (Dorsey).  Each said he understood.  *Id.*  Neither Mr. Robinson nor Mr. Dorsey gives any specifics on why they felt "coerced" by the wired nature of the plea.  In his Reply, Mr. Dodd argues that the close "familial" relationship among the Defendants, "coupled with the gross injustice of identical sentences" when Mr. Dodd was not charged with any violence, constituted coercion.  Dodd's Reply at 4.  The Court recognizes that Mr. Dodd faced a difficult choice.  He was, however, facing a life sentence under the Guidelines[5] and entered a plea agreement to 25 years.  Given that they

---

[5]  Mr. Dodd agreed to the sentencing calculations in his Plea Agreement, which stated:

> 8.  The parties project that the base offense level under the U.S.S.G. Manual will be 38.  The base offense level will be adjusted upwards 1 level for offenses that occurred within one thousand feed of a school, (Application Notes to § 2D1.2) and two levels for possession of a firearm (§ 2D1.1(b)).  This results in an adjusted base offense level of a second grouping of offenses of 41.
>
> 9.  The parties project no victim related adjustments and a [sic] additional assessment for role in the offense, § 3B1.1(c) of +2.  This results in an

all benefitted from its terms and avoidance of trial (many of the defendants in this case who went to

trial have received life sentences),[6] their lack of specificity on the alleged coercion is telling.  The

Court finds that the Defendants have failed to muster evidence of coercion and certainly not coercion

of a constitutional dimension.

                3.   Advice Regarding Plea Withdrawal

           Mr. Dodd complains that the Court was obligated to advise him that he would not be

able to withdraw his guilty plea once accepted.  He implies that such advice is constitutionally

required because other trial courts have so advised other defendants.  *See, e.g., Holland*, 117 F.3d

at 594.  The Court agrees that it is a good practice to give such advice and notes that it customarily

does so.  Because this plea proceeding involved three Defendants and was complicated by the nature

of the wired plea, the Court did not address a change of plea except in the context of its impact on

the wired agreement.  The Court advised each Defendant of the finality of their pleas by explaining

---

adjusted offense level of 43.

10.   The parties contemplate that your client will receive a downwards
adjustment of -3 for early acceptance of responsibility under § 3E1.1.  This
results in an adjusted offense level of 40.

11.   The parties project . . . [Mr. Dodd's] criminal history is category 1. The
sentencing guideline range for level 40, category 1, [is, under the 2004
Manual,] 292-365 months.

Plea Agreement of K. Dodd, dated Jan. 16, 2007.  Because the Court would not accept the 3-point
deduction for early acceptance of responsibility, Mr. Dodd's Guideline sentence would be at offense
level 43, criminal history category 1, which would result in a life sentence.

    [6] Jonathan Franklin, William D. Robinson, and George Wilson all received life sentences.
*See* Am. Judgment (Franklin) [Dkt. # 749]; Judgment (Wm. Robinson) [Dkt. # 653]; Am. Judgment
(Wilson) [Dkt. # 644].  Joseph Blackson received a sentence of 35 years, *see* Judgment [Dkt. # 646],
and William Simmons received a sentence of 22 years,  *see* Am. Judgment [Dkt. # 645].  Mr. Gooch
was convicted, *see* Verdict [Dkt. # 812], but he has not been sentenced at this time.

that if the pleas were accepted, there would be no jury trial for any of them.  Tr. at 19-20 (Dodd); *id*.

at 29-32 (Robinson); *id*. at 41-42 (Dorsey).  The Court also advised each Defendant that, due to the

wired nature of the plea agreement, if one of them withdrew his plea, it would collapse for all.  *Id*.

at 19 (Dodd); *id*. at 29 (Robinson); *id*. at 41-42 (Dorsey).  Each said he understood.  *Id*.

There is no constitutional requirement that a defendant be advised that he may not

withdraw his plea after it has been accepted by the Court.  This is for good reason.  A defendant *may*

withdraw his plea after it has been accepted upon showing a "fair and just reason for withdrawal."

Fed. R. Crim. P. 11(d)(2)(B).  The argument that the plea colloquy was constitutionally infirm

because the Court did not advise these Defendants that they would not be allowed to withdraw their

pleas, once accepted, is without merit.

4.  Intrusion Into Plea Negotiations

Mr. Robinson claims that the Court impermissibly interposed itself into plea

negotiations and must vacate the pleas.  He relies upon *United States v. Baker*, 489 F.3d 366 (D.C.

Cir. 2007).  The argument mis-characterizes the facts of this case and the circumstances in *Baker*.

*Baker* involved a judge indicating to a defendant considering a plea that the defendant

would probably be sentenced in a manner similar to a different defendant, so that Mr. Baker would

probably get one year and one day incarceration.  *Id*. at 369.  In fact, when the trial court sentenced

Mr. Baker, the sentence imposed was 40 months.  *Id*. at 370.  The D.C. Circuit held that the trial

court had improperly induced Mr. Baker to accept a plea in the false expectation that his sentence

would be short.  *Id*. at 375.  In contrast, here the plea negotiations were completed when the parties

appeared before this Court.  Having sentenced other co-conspirators to much longer terms of

incarceration, the Court found the agreed-upon 25 years for a narcotics and RICO conspiracy, gun

-11-

charges, and two murders, to be "quite a deal." Tr. at 6. The Court noted that it was "real close to . . . not accepting the 11(c)(1)(C) and just saying this isn't enough time for the crime." *Id*. Inasmuch as the Court in its discretion may, in fact, refuse to accept a Rule 11(c)(1)(C) plea, the Court's warning to the parties that this particular plea could be in jeopardy did nothing to imperil the legitimacy of the pleas entered by Messrs. Dodd, Dorsey, and Robinson. If, however, there was any error in commenting on the nature of the deal, such error was harmless. *See* Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights.").

### C.   Claims of Actual Innocence

Each Defendant makes a claim that he is actually innocent of the charges to which he pled guilty and as to which he accepted, under oath, a factual predicate. To be frank, the Court has twice sat through the presentation of the evidence surrounding the narcotics conspiracy, the RICO conspiracy, and the murders, and has taken numerous guilty pleas from co-conspirators. The Court regards Defendants' assertion of innocence with skepticism. Incredulity aside, these Defendants have provided nothing on which the Court might assess the validity of their claims of innocence. A defendant seeking to withdraw his guilty plea "must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury." *Cray*, 47 F.3d at 1209 (citation omitted). A general denial is not sufficient to satisfy this factor. *Curry*, No. 05-1301, 2007 WL 2176135, at *3. Messrs. Dodd, Dorsey, and Robinson do not offer anything that would support their bald statements of innocence. Indeed, the Defendants' representations in open court "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 75 (1977).

D.  Prejudice to the Government

While the Defendants have failed to make any showing that the withdrawal of their guilty pleas should be allowed, the Court notes an additional interest that would be affected should any balancing of rights and harms be conducted.  The United States was ready, willing, and able to begin trial for these Defendants when they decided to plead guilty.  That trial proceeded against Mr. Gooch alone, continuing until early June when the jury convicted Mr. Gooch but spared him the death penalty.  These pleas did not spare the United States the expense and effort of a trial.  To now allow these Defendants to withdraw their pleas and require the prosecutors to try the same case a third time — based on faulty assertions of coercion and innocence — would be extremely prejudicial to the interests of the United States and the people of Washington, D.C.[7]

## IV.  CONCLUSION

Finding that it is neither unfair nor unjust to hold these Defendants to their solemn representations to the Court at the Rule 11 hearing, *see United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993), the Court will deny the motions to withdraw guilty plea filed by Messrs. Dodd [Dkt. ## 790, 836, & 839], Dorsey [Dkt. ## 822, 835, 837], and Robinson [Dkt. ## 789, 807, 834]. A memorializing order accompanies this Memorandum Opinion.

DATE: August 9, 2007                   _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge

---

[7] Mr. Dodd argues that another trial would merely be a matter of inconvenience to the United States.  The argument overlooks the interests of the 100 or so witnesses, whose lives would again be disrupted, and the cost to the United States of re-assembling the witnesses and evidence for trial, to say nothing of the imposition on the Court to convene a five-month trial for a third time.